We'll hear the final case to be argued this morning, United States v. Bowles. Thank you, Maria. Oops. Sorry. Good morning. May it please the Court, Stephen Barth on behalf of the appellant, Donald Ray Bowles. Your Honors, we've raised a number of claims in our brief, three of which would require vacating the conviction. I'm going to begin by talking about the inadmissible hearsay that was admitted over our objection. However, if the Court wishes to redirect me, it should feel free to do so. Before you get to that, yeah, I do have a question about the warrant affidavit. Of course. Please. And I wondered whether there was anything that was misleading or inaccurate in the warrant affidavit in your view. And in particular, I wanted to direct your attention to, let's see, paragraph 47 on page 19. About once the agents recognize that there may be a staleness issue, they decide to ping the Hotmail account that Mr. Bowles had. Yes. Again. And as presented in the affidavit, it kind of looks as though the ping happened at the same time in 2010, right after Mr. Bowles accessed the site. And it seemed to me that the district court's ruling on this understood it in that way. And, Your Honor, we mentioned that in our reply brief. The second ping, as you call it, actually happened about four weeks prior to the application for the search warrant that went to Judge Sessions. That was by far the freshest information that they had regarding Mr. Bowles' activities. And in that instant, in that attempt to entice Mr. Bowles, not only did he not try to download any child pornography, he didn't even respond to the e-mail or go to the website at all. We've suggested in our papers that that is, to some degree, misleading, because they knew they had a staleness problem. Remember, the observable facts that were attributable to Mr. Bowles were approximately two years old by the time the warrant application was made to the district court. And here we have very fresh information, approximately a month old, and they don't highlight that for the court. In fact, they're silent about its exact timing, other than it was subsequent to the first ping. It looked to me like it was presented in such a way as you could have understood it as having happened contemporaneously with the initial visit and therefore being of one unit of activity in a way. That's correct. And several things we point out about the affidavit we think had shortcomings. Of course, the fact that its defining aspect is that it didn't describe any illegal activity that was attributable to Mr. Bowles. That's the first thing. However, in keeping with this Court's directive in FALSO, it did have particularized information. However, that particularized information, as it related to Mr. Bowles, was strictly related to lawful activity. Is it your position that an affidavit in support of a warrant application needs to show illegal activity in order for a warrant to issue? Doesn't there just have to be a set of factual allegations that give rise to the reasonable probability that there was contraband at a particular location? Yes. As we've conceded in our briefs, the prima facie showing is not a prerequisite or a necessary requirement to find probable cause. I would say, however, two things about that. One, describing something which seems to be illegal certainly is something that one would expect or would go a long way toward probable cause, and they didn't have that here. And secondly, under this Court's holdings in both FALSO and Raimonda, we think that either there has to be some allegation or evidence to suggest that the person in question either downloaded, posted, or at least viewed child pornography, or in the alternative was a member in a website that catered exclusively to child pornography, which we know is not the case here. The Girls' Forum Circle website, the only descriptions that the affiant gave for the Girls' Forum Circle website were those regarding child erotica, purely lawful images. They had the opportunity, of course, one would think, although I'm not entirely sure, to describe child pornography. They certainly described in great detail their own website, but they didn't do so for the Girls' Forum Circle website. They didn't, in contrast to Martin, they didn't, for instance, download 100 images of child pornography that they then described. Again, the own – I'm sorry, Your Honor. Sotomayor, would you concede that Mr. Bull's prior conviction in 2001 established that he was a collector, as referred to in the affidavit, or not? Well, pursuant to this Court's case law at that time, yes. But remember, that conviction was 10 years old. And so we think the staleness of the conviction certainly dilutes whatever evidentiary value that effect. The affidavit says once a collector, always a collector, in effect. Do you take issue with that? I do. You know, that's a conclusory statement by an affiant whose expertise in the predilections or psychology of people who collect child pornography is not established. Here we have a man who was convicted of a similar crime, the crime, 10 years ago, but who then went through a long period of supervised release that he successfully completed, got off of supervised release, and apparently led an otherwise lawful life. As the Court pointed out at the in limine stage, in which we asked that this prior conviction be withheld from the jury, an in limine motion that the Court granted, he said, look, this is of limited value. That in and of itself, I think, is indicative that the prior conviction, while it may be something the Court should consider, is one of limited value. Was there anything else that you contend was misleading about the affidavit other than the failure to highlight the recency of the second ping? Not misleading, Your Honor, although, again, we think that because of the way this affidavit was made out, including the fact that in this case it gave zero description of the specifics of this website, where the contraband was found, it said it comes to conclusory statements about this board, the majority of it was used for making Does that show recklessness or some fault on the part of the agents? Absolutely. And that's we've I think we've made two claims regarding good faith. One was that the affidavit itself was totally lacking in probable cause. And the second is that the agents acted recklessly, not simply because of the time delay, although that's a big part of it, and not simply because the second ping, as the Court has described it, was somewhat misleading. It certainly wasn't obvious. But because it comes to these conclusory statements such as the board, the majority of the board had child pornography available. What does that really mean? Remember, it sort of obliquely references that this website actually had an elite members only section. Well, is that where the child pornography was found? Is that why the FBI was unable to describe any image of child pornography that was found on this website? Mr. Bowles was not alleged to have been a member of the elite members section of the website. Because the affidavit is totally lacking in describing the specifics of the girlsforumcircle.com website, we do think ultimately it lacked in probable cause. And for the reasons already stated, we think it was misleading to the district court. Intentionally misleading? Well, potentially. Well, don't you have to show, I mean, you've got a problem with Leon. I mean, you've got a magistrate that went ahead and signed a warrant. And the magistrate could have easily said, oh, this is stale. In fact, he did say it was stale with regard to when the trial actually occurred. He could say, this doesn't really tell me what the website has on it. It's different from Martin. I have familiarity with Martin. And the court struggled with Martin. And we've kind of made it a fact-intensive kind of analysis. We haven't really given much guidance, frankly, in that regard. But these are very fact-intensive cases. But the inadequacies of that, I mean, they didn't misstate a fact, did they? Not that I can tell, Your Honor, although I wonder what else was left out of the warrant for the reasons I've already. Well, you had a hearing. Did you have a hearing? No. This was decided as a legal matter on the four corners of the affidavit. Okay. And to the extent that the court has, maybe it's not, but I interpret the court's question as did we ask for a Franks hearing. Right. We did not ask for a Franks hearing. No. So what am I supposed to do with this? I mean, you've got Leon there, which says that, you know, good faith. They went to it. They themselves said, I mean, obviously they themselves said there may be some staleness here. Well, let the magistrate decide. The magistrate decides it. That's what Leon's all about, isn't it, to let the magistrate decide. Yes. I would agree with the court on that. And certainly Leon and good faith is something that every appellant in these Fourth Amendment warrant cases needs to overcome. Respectfully, sir, I do believe that we overcome it in this case. I understand. No. And I don't take you to be anything but that. Okay. These are tough. These are very tough cases, Ben, and you have a lot of meaningful things to say. I mean, the conviction is 10 years old. Yes. And he has nothing in between. That's right. And he takes the bait on one, but he doesn't click on anything. And then he doesn't take the bait the second time. Correct. And so they don't have anything that puts this in the Martin kind of category where we knew what the images were and that he was utilizing the website. And one more thing I would like to add about Leon and good faith, Your Honor, if I may. And that is, you know, this warrant was issued after falso. So there was, of course, direction from this circuit to affidavits of affidavits seeking a search warrant of a person's home and their computers that you need to be descriptive about the particularized information about a suspect that indicates he or she is involved in criminal activities. They had the benefit of that holding and they chose to ignore it. Okay. I notice my time is up. Does the Court have questions about any of my other very strong arguments? I don't. Thank you. Thank you. You have some time for rebuttals. We'll hear from the government. You're refreshing, Mr. Barth. May it please the Court. My name is Barbara Masterson and I'm representing the government and I know I have a hard act to follow in Mr. Barth. Your Honor, with respect to whether probable cause existed in the warrant, I mean, the Court is, this circuit is struggling to define what it is that will define probable cause in this realm. The defense wishes for there to be actual child pornographic images that are involved in every case. But as the Court is recognizing, every case needs to stand on its own merits. And the best that we can come up with is a general framework to look at. But isn't it important, I mean, that in this case, despite it being served up to him very easily, Mr. Bowles didn't click on any child pornography. He came close to the edge and he backed away. And we don't know why. But I find that significant. And I particularly that there was no recent activity. This conviction was a decade old. He'd not gotten in trouble since then. And he just didn't cross the line. So that concerns me. And I'm also concerned about the notion of who is a collector and who isn't. This seemed like a form affidavit with a lot of material that we've seen in other warrant affidavits before. But I'd be kind of interested in a psychologist and kind of what do psychologists say about who are collectors and who aren't. Does everyone with some kind of sexual attraction to a child become a collector of images or not? It doesn't seem to be obvious that one would. And yet that's really the premise for reading this failure to engage in activity that goes over the line and looking back to the 10-year-old conviction. So I'm troubled by those elements, and I wish you could speak with them and allay my concerns. Yes, Your Honor. First off, the conviction of he was... Speak into the mic if you would, please. I apologize. No, no, that's okay. The conviction was in 2001. The activity that we were concerned with took place in 2009. So it was actually only 8 years. And Judge Sessions addressed in particular the... But until the warrant. I mean, the warrant was in 2011, right? Correct. But some of the... So when the warrant was being evaluated, the conviction was 10 years old. Yes, Your Honor. And the warrant, in fact, affidavit, misstated the date of the conviction to 2000. But in any event, it was a decade old. Your Honor is correct. As of the date of the warrant, I was referring to the date of the... Yeah, and we have just two incidents where he was offered through a government lure an opportunity to access child pornography, and he didn't do it. Well, it is interesting that he did not. However, he responded to the e-mail in the first place, and the e-mail was graphic, as in, this is... If you go into this site, you can have child pornography for days, and here's... But didn't it also make child erotica, which is not illegal, available, as ugly as, you know, we might find it? I don't have an answer to that, Your Honor. But he did not... He did respond, and Judge Sessions addressed that, and he found that what was more important was that Mr. Bowles had responded to the e-mail in the first place, not whether, when he was at the second page, he actually went further and got additional child pornography. I mean, Mr. Bowles was, as it came out later on, he did have wiping software and encryption software. So he, at the time that we searched his residence, he had become proficient at attempting to conceal his tracks. Isn't it so that the government also could have followed his... Was it a Hotmail account or whatever? It could have surveilled him in other ways to look for activity that would have crossed the line if he was, in fact, doing that, and the government didn't do that? I mean, all we have is this ping that was unresponded to right at the time that the warrant was issued. Right. I mean, there's always... There are limits... I'm sorry. There are always more things that we could do in all cases, and what is before the court is, what did we do and what did we have? And I do take issue with counsel's suggestion that there was a paucity of detail about the girls' forum circle in the affidavit. There were several paragraphs related to that. It referred to the primary purpose of that website as being the child pornography trading. It was something that Judge Sessions relied on. And so we do have that activity, and it was... It wasn't the kind of detail that we saw in Martin and in the Candyman cases, where the fact that you could do non-legal activities on the website was important. And we don't know from this record, you know, to what extent someone could go on the girls' forum website and engage in non-criminal activities. Is that a factor? And was it reckless for the agents to not provide that kind of detail? I don't think that it was... I don't think that there was any intentionally reckless or misleading behavior on the part of this agent towards the court. There was a reference as to what was found on that. It was telling that there was no adult pornography. So basically, whoever was at that website, though, had a sexual interest in children, which is why they were there. Whether there was child erotica, child pornography, or whatever, we know that Mr. Bull's sexual interest in children is kind of departing from our ordinary norms. That's not illegal. I agree. But Mr. Bull's had... We had the benefit of knowing what it was he was capable of through his prior conviction. And in the prior case, he had collected child pornography over an extended period of time. And so that helped to inform the decision on what it was that his activities were when he was on that forum. Plus, he was an active poster. He commented, as was in the affidavit, he also posted, admittedly, images of child pornography. But I don't think that this is necessary... should be fatal to the probable cause determination in the warrant, because we have to look at the totality of the affidavit. Why don't you address the good faith, some of the arguments of Mr. Bull's as to why the good faith exception should not apply? Well, the primary one that is argued... I mean, it's important to recall what they don't argue, that they don't argue that there was an intent to mislead the judge or any sort of nefarious conduct. What we have is a suggestion that the affidavit was devoid of probable cause, and reasonable nines are debating that right now. So I think to call the affidavit facially invalid is incorrect. It is correct, though, that the affidavit doesn't flag the recency of the ping, that that's all that had happened in a year since that most recent kind of web-based interaction with Mr. Bulls, that an agent had sent an e-mail and had gotten a response. And that struck me as presented by the judge on page 3 of his decision. He says, after accessing the second page of the website, the user did not attempt to download any of the advertised videos or attempt to access the paid area for live video stream. An FBI agent sent another e-mail to the same e-mail address, attempting to elicit a response, but the user did not respond. And then he moves a year forward to August 2011, suggesting he thought that was of a piece and suggesting some possible misapprehension of the timeline here. And that concerned me a little bit. Do we know that, though? I mean, I agree completely, but we don't know that because there was no hearing. I agree completely that there's a logical conclusion that can be drawn that there was a date consciously omitted. But by the same token, we don't know whether that was poor draftspersonship. We don't know who drafted the affidavit. We don't know if an assistant U.S. attorney drafted the affidavit in conjunction with an FBI agent or what. So, I mean, that's problematic for us, isn't it, in some way? I understand. And I was not the assistant who handled this case at that time, so I don't know. I'm not trying to pin anything on you, Ms. Masterson. Thank you, Your Honor. To address the other part of the good faith, which is, I believe, the staleness and the fact that the agents were cognizant that this was a potential issue. And I think that, back to your comment, Judge Wesley, about how these were agents that they were aware that there was a possible issue. So what do you do when there's a question? In the government's view, you go to the assistant U.S. attorney and you talk about it, and then, ultimately, you go to the judge. Well, I don't mean to interrupt Judge Carney's question because it goes right to the heart of what we're talking about here. But, I mean, this is—we have a tough—this Court has struggled with this. And I was on the first panel, and Martin, and then, you know, Martin catches hell from some of the subsequent panels, and they're factually different. And Martin hasn't been overturned by a non-binary ruling in this Court, so Martin is still good law. But Martin is only as good as its facts, and the other rulings are only as good as their facts. But here you have something that's kind of interesting. This is a 10-year-old conviction, and you have an affidavit from an FBI agent who says people are collectors. And you have nothing that proves that he's collecting. You have him posting child erotica pictures, which are not illegal, in a site that caters to both. When he's requested to post something, he posts that. And then that's a year old, right? And then you have another more recent ping where he kind of walks into the store and doesn't shop. You know? And I guess the thing that troubles me about this—you can tell we're all having a bit of trouble with this—is that does somebody get a free pass just because they had an interest in child pornography? I mean, is it so revolting that somehow we suspend—if this were the possession of drugs, this wouldn't be close, would it? I don't think it would. I mean, this is the thing that troubles me about this. And so we'll get the hell beat out of us, depending on how we rule on this. But this is—once a collector, always a collector? That's what the affidavit says. Once a collector, always a collector? Well, I think—and I see myself— Right. Once a collector, always a collector? I wouldn't advocate for that, Your Honor. Okay. Then what's the rule of law that we write here? Maybe no probable cause, but good faith? Is that the rule of law that we write here? Well, whatever the Court needs to do to affirm the conviction, then I'm all for. But I think that— In fact, you are. Yes. But I think that we have to remember that probable cause is the fluid concept, and we have to look at the totality of the affidavit. And in this case, what do we know about this individual that would lead the court to believe, the instrument court to believe, that he is likely to have bad images and likely to still have them? I mean, in Raimonda, that was, you know, the 76 thumbnails 9 months earlier, and that was booted out purely on staleness claims. Right. So to suggest that that makes a requirement that you have to have these images, I think that's misreading Raimonda. But looking at the totality, looking, do we have images? Do we have child erotica? Judge Sessions articulated that child erotica clearly represents a sexual interest in children. I know sexual interest in children is not illegal, however repugnant it may be. But when you look at somebody like Mr. Bowles, he had a prior conviction. He went to jail for 15 months. Somebody like that, it's a proven documented interest in child pornography. He is poking around on websites that have child pornography on them. He responded to the e-mail. But, yeah, and that was a year before he responded and didn't download. And the most recent thing he did was not respond to an e-mail at all. How can we not have serious staleness concerns? Well, I mean, then we get into the staleness examination of, you know, what's the, how likely is it, at its core, with staleness, how likely is it that that individual who is being suspected of that conduct is still going to have it? I mean, in Raimonda, the expert said that all the images that were in the thumbnail cache were going to be gone within 30 days, and they were 9 months later. In this case, we know, we had the benefit of knowing, and Judge Sessions, who sat on his original prosecution, he had the benefit of knowing, as well, that in that case, he had a long, he had been collecting child pornography over an extended period of time, and that he was actively communicating and doing all sorts of stuff. And he served his sentence, and he got through supervised release. I mean, I think you're taking a position that once you're a collector, you're always a collector. I respectfully disagree, Your Honor, because he's not, in that case, and everybody who ever gets off of supervised release is at risk for a search warrant just because they exist. And that is not at all what we're doing. But here, we have him on the members-only website that did have child pornography. We have him responding to an email. While he didn't bite, he still responded, and that was persuasive to the judge. And can we say that it was erroneous for Judge Sessions to issue the warrant on that? The government obviously thinks no. And we also think that, good faith, that the agents did the right thing. They went to the judge, because the alternative, if they had sat on the warrant and decided not to pursue it, then, you know, it's an open question. It's an issue of law as to whether or not something is stale. And so do you sit on it? I mean, if it's 3 or 4 years old, then it's a clearer question. But when it's a judgment call like this, you go to the issue of the judge. It was a year old. And then when they had pinged him, he didn't respond. That's a long time that passed. I mean, they did sit on it, really. Well, maybe they did, but Judge Sessions did not think that, because there is also no allegation whatsoever that Judge Sessions advocated his judicial role, which is one of the good faith factors. One does worry. I mean, Judge Sessions sat on the original conviction and sat on the warrant issuance and the suppression motion. And I would find that. I don't know Judge Sessions, but I would find that difficult to come at fresh, I guess, looking at it later on. But anyway, that's how it is. Thank you. Thank you. We'll hear the rebuttal. Your Honors, the government mentions in its argument and it pressed this in its briefs and highlighted that it was part of Judge Sessions holding that Mr. Bowles went to the undercover website, that that in and of itself was indicative of probable cause. And I just, as this Court knows, that calls into play Ibarra v. Illinois and the long-held understanding that mere association is not enough to raise probable cause. Secondly, Judge Wesley had pointed out that there was no Franks hearing, and certainly every time as a trial lawyer I have failed to advance the record in some meaningful way, it is seared onto my frontal cortex. With that being said, I'm sure Agent Alford would have testified that there was no intent to mislead the Court. However, we now have, as I see it, at least three judges, and certainly we raised this in our briefs, that this point was misleading on its face to some degree. There was, you know, in fact, the affidavit says an FBI agent has since sent another e-mail in a way that suggests less of a temporal link. And I wonder what your kind of core response is to the, you know, the judge ruled on it and said it was okay. The judge is the expert in sealness in the law. Why aren't the agents entitled to rely on that? Well, in many circumstances, as we know, pursuant to Leon, the agents are. However, as we discussed in my opening remarks, we do think that that statement in and of itself has the tendency to mislead the district court. It seems to ‑‑ this Court has seemed to understand that it has the tendency to mislead, and for all the other reasons that I discussed in my opening remarks, that is the lack of detail with regard to the Girls Forum Circle website, the fact that they didn't describe any of the child pornography when it seems to suggest they could have. It doesn't indicate that they downloaded any images, and instead only describes child erotica, lawful child erotica in lawful acts, particularized to Mr. Bowles. Certainly, I would welcome any questions about this issue or any other issue if the Court has them. Otherwise, I would submit. Thank you, Your Honors. Thank you both. Thank you. We'll reserve decision. The last case is on submission. Accordingly, I'll ask the Court to adjourn. Four seconds to adjourn. I don't think we need to ‑‑